**Jose R. MONTES; Eduardo Castro; Juan A. Monterrosa, Plaintiffs–Appellees,**

v.

**Richard L. THORNBURGH; Roy Daniel, Defendants–Appellants.**

No. 88–5682.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 1989.

Decided Nov. 16, 1990.

Ellen Sue Shapiro and Carl H. McIntyre, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

Peter A. Schey, Center for Human Rights and Constitutional Law, Los Angeles, Cal.; Sandra Pettit, Legal Aid Foundation of Los Angeles, Los Angeles, Cal., for plaintiffs-appellees.

Before BROWNING, FARRIS and CANBY, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

A group of political asylum applicants sought injunctive and declaratory relief against filing requirements imposed by Immigration Judge Daniel in addition to those required by INS regulations. After suit was filed, the Executive Office for Immigration Review (EOIR) suspended the additional requirements and reopened deportation proceedings in those cases in which asylum applications had been rejected for failure to comply with them. The district court dismissed the action as moot, but awarded fees to plaintiffs under the Equal Access to Justice Act (EAJA). The government appeals, raising no issues under EAJA but arguing the district court was without power to award fees because it lacked jurisdiction over the underlying action. We affirm.

## I.

An INS regulation (8 C.F.R. § 208.2) requires asylum applicants to complete form I-589, which calls for personal data regarding the applicant and conclusory recitations disclosing the basis for the application. In addition Immigration Judge Daniel required applicants to submit an affidavit setting forth in detail the specific factual basis of their claim, affidavits of witnesses or written offers of proof signed by counsel reflecting the testimony of all proposed witnesses, and copies of all documentary or other evidence to be offered at the hearing. Any applicant not meeting these requirements was "deemed to have ABANDONED his/her request for asylum." (emphasis in original notice). Judge Daniel also reviewed the contents of completed applications, including those accompanied by the additional documentation, and rejected those that failed to meet an unstated standard of sufficiency.[1] Upon rejecting an application for filing Judge Daniel fixed a date for voluntary departure. If the applicant failed to comply, an order of deportation was entered.

Judge Daniel's refusal to permit the applicants to file their applications completed in accordance with the regulations denied those applicants the benefit of a number of rights. Applicants for political asylum who file complete and timely applications are eligible for asylum proceedings, deportation withholding proceedings and temporary employment authorization. *See* 8 C.F.R. §§ 208.3, 208.4, 242.17(c). As the Board of Immigration Appeals (BIA) pointed out:

Under the facts presented and controlling regulations, the immigration judge was required to forward the application to the Bureau of Human Rights and Humanitarian Affairs for an advisory opinion, provide the respondent the opportunity to inspect, explain and rebut that opinion, provide the parties the opportunity to present evidence for the record in deportation proceedings regarding the application, and rule on merits of the

**1.** The EOIR's Board of Immigration Appeals (BIA) later held:

There is no authority under existing regulations for an immigration judge to "reject" at the outset a completed and timely filed asylum application based on a threshold assessment that the substantive claims presented do not reflect either a clear probability of persecution or a well-founded fear of persecution. Moreover, an immigration judge cannot refuse to accept and process a completed and timely filed asylum application based on filing requirements that go beyond those mandated by controlling regulations. *In re Marina Isabel Palma-Callejas,* No. A27 209 610 (BIA 1986).

application. *See* 8 C.F.R. §§ 208.6 and 208.10(b), (c), (e) and (f).

*In re Marina Isabel Palma–Callejas,* No. A27 209 610 (BIA 1986).

A group of attorneys met with Judge Daniel informally to express concern over the additional filing requirements, but Judge Daniel took no action. As the trial court pointed out, district counsel for the Los Angeles District Office of the INS announced the practice "would continue, unless challenged by a lawsuit." The Chief Immigration Judge knew of Judge Daniel's filing requirements six months before appellees filed this lawsuit, but did nothing.

On June 23, 1986, appellees filed this suit on behalf of themselves and a proposed class of asylum applicants[2]. They sought injunctive and declaratory relief on the ground that the additional requirements violated INS regulations, the due process clause and the 1967 Protocol Relating to the Status of Refugees, TIAS 6577, 19 U.S.T.S. 6223. Two days later, the Chief Immigration Judge suspended Judge Daniel's additional requirements and directed that copies of the suspension order be sent to all parties whose asylum applications had been rejected for filing. In July, INS moved to reopen the cases of all members of the proposed class who could be identified.

In the meantime one of the applicants whose petition had been rejected as incomplete had sought administrative relief by appealing to the BIA. On August 1, 1986, the BIA declared Judge Daniel's filing requirements invalid. *Palma–Callejas, su-*

*pra.* Shortly thereafter the Immigration Judge and the BIA granted the government's motions to reopen the remaining cases.

The district court rejected the government's claims that section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a, vested exclusive jurisdiction to review deportation orders in the Courts of Appeal, and that administrative remedies were not exhausted as required by § 1105a(c) and by applicable case law. Nonetheless, the district court found appellees no longer needed injunctive or declaratory relief because the government had agreed to stay the deportation of applicants whose applications had been rejected for filing, to reopen the deportation proceedings of these applicants, and to notify appellees before reinstating any of the challenged filing requirements.

Appellees requested attorneys' fees under the Equal Access to Justice Act. 28 U.S.C. § 2412(d)(1)(B) (EAJA). The district court awarded fees against Judge Daniel but not against the Attorney General or the EOIR. The government appeals the award of attorneys' fees.[3]

## II.

■ The parties agree a court must have jurisdiction over an action before it may award fees under EAJA. *See* 28 U.S.C. § 2412(d)(1)(A). We review questions of subject matter jurisdiction de novo. *Stock West, Inc. v. Confederated Tribes,*

---

2. Appellees defined the proposed class as "all persons who have in the past or may in the future attempt to file duly executed applications for political asylum and withholding of deportation before Immigration Judge Roy Daniel and whose applications have been or will be rejected for filing and adjudication." The district court denied certification of the class on the basis of appellants' representations that the case was moot.

3. The three defendants in this case are the Attorney General, the Executive Office for Immigration Review, and Immigration Judge Daniel. The district court awarded fees only against Judge Daniel, finding the other defendants' positions "substantially justified." The INS' notice of appeal listed only the Attorney General, not Judge Daniel, designating the remaining defen-

dants as "et al." A notice of appeal must "specify the party or parties taking the appeal." Fed. R.App.P. 3(c). While the use of "et al." is insufficient to confer appellate jurisdiction where it fails to give notice of a particular defendant's intent to appeal, *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 317–18, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988), *Torres* does not require that the individual names of the appealing parties be listed where a generic term, such as "defendants," adequately identifies them. *National Center for Immigrants' Rights, Inc. v. INS,* 892 F.2d 814, 816 (9th Cir.1989). That is the case here. Moreover, because the Department of Justice, rather than Judge Daniel personally, was ordered to pay the fees, the real party in interest is the Attorney General who is specifically named in the notice of appeal.

873 F.2d 1221, 1225 (9th Cir.1989). The district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous. *Id.*

■ The government's argument is that the district court did not have jurisdiction over the underlying cause of action because appellees are attacking final orders of deportation, and 8 U.S.C. § 1105a(a) vests exclusive jurisdiction in the court of appeals to review "all final orders of deportation ... made against aliens within the United States pursuant to administrative proceedings under section 1252(b) [deportation hearings]". Appellees respond that they are not seeking review of individual orders of deportation, but are challenging the policy or practice followed by Judge Daniel in processing claims for asylum.

The Supreme Court has construed "final orders of deportation" under § 1105a(a) as including rulings upon which the validity of the deportation order is contingent. *INS v. Chadha*, 462 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983). Thus, orders denying requests for discretionary relief sought during deportation proceedings, *Foti v. INS*, 375 U.S. 217, 232, 84 S.Ct. 306, 315, 11 L.Ed.2d 281 (1963), or rejecting challenges to House vetoes of orders suspending deportation, *Chadha*, 462 U.S. at 938, 103 S.Ct. at 2777, come within the exclusive review provisions of § 1105a(a).

Nevertheless, section 1105a(a) does not "embrace[ ] all determinations 'directly affecting the execution of' a final deportation order." *Cheng Fan Kwok v. INS*, 392 U.S. 206, 213, 88 S.Ct. 1970, 1975, 20 L.Ed.2d 1037 (1968). As the Supreme Court noted, "if Congress had wanted to go that far, presumably it would have known how to say so." *Id.* at 213–14, 88 S.Ct. at 1974–75. In *Cheng Fan Kwok*, the Supreme Court held an order denying a stay of deportation was not a final order encompassed within section 1105a(a)'s exclusive review provisions because the alien "did not attack the deportation order itself but instead

[sought] relief not inconsistent with it." *Id.* at 213, 88 S.Ct. at 1975 (citation omitted).

■ Section 1105a(a) also does not apply to suits alleging a pattern and practice by immigration officials which violates the constitutional rights of a class of aliens. *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1033 (5th Cir.1982) (*disapproved on other grounds, Jean v. Nelson*, 727 F.2d 957, 976 n. 27 (11th Cir.1984) (en banc), *aff'd*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). *See also International Union, United Automobile Workers v. Brock*, 477 U.S. 274, 285, 106 S.Ct. 2523, 2530, 91 L.Ed.2d 228 (1986) (claims that a program is being operated in contravention of a federal statute or the Constitution may be brought in federal court even where statute bars review of individual eligibility determinations).

In *Haitian Refugee Center v. Smith*, plaintiffs sued in district court challenging INS' use of expedited administrative procedures to process Haitian asylum applications. The court distinguished the exclusive jurisdiction of the courts of appeal under Section 1105a to review "alleged procedural irregularities in an individual deportation hearing *to the extent these irregularities may provide a basis for reversing an individual deportation order*" from "the authority of a district court to wield its equitable powers" when confronted with "a program, pattern or scheme by immigration officials to violate the constitutional rights of aliens." 676 F.2d at 1033 (emphasis in original). The Fifth Circuit emphasized that the district court had no authority to rule on the merits of the underlying issue of deportability or entitlement to discretionary relief as to any individual, but could provide declaratory and injunctive relief against a program violating constitutional rights. *Id.* at 1033 and n. 23.[4]

This circuit adopted and applied the rationale of *Haitian Refugee Center v. Smith*

---

4. The government argues this case differs from *Haitian Refugee Center v. Smith* because that case was unique in the pervasive and unconstitutional nature of the harm alleged, the irreparable harm suffered, and the entrenched posi-

tion of the agency. As we pointed out above, Judge Daniel's conduct was contrary to established law, and he had refused to change it despite requests. Contrary to the government's assertion that rejected applications could be im-

in *National Center for Immigrants Rights, Inc. v. INS,* 743 F.2d 1365, 1368–69 (9th Cir.1984). Plaintiffs in *National Center for Immigrants Rights* challenged on statutory and constitutional grounds the imposition of an automatic employment prohibition in release bonds required of aliens in connection with deportation proceedings. Relying on *Haitian Refugee Center v. Smith,* we held plaintiffs need not exhaust the highly restricted habeas corpus procedure of 8 U.S.C. § 1252(a) for reviewing Attorney General determinations concerning release on bond before they invoke district court jurisdiction over federal questions under 28 U.S.C. § 1331, and over claims arising under the immigration statutes, 8 U.S.C. § 1329. *Id.* The court found it significant plaintiffs were not seeking review of the merits of any individual INS determination regarding release on bond, but rather were challenging on statutory and constitutional grounds the inclusion of a prohibition against employment in all bonds. We reaffirmed this position in *National Center for Immigrants' Rights, Inc. v. INS,* 913 F.2d 1350, 1352 (9th Cir., 1990), holding "[t]he district court had jurisdiction since [plaintiffs] challenged the blanket provision on constitutional and statutory grounds and did not seek a review on the merits of any individual determination regarding release on bond." *Id.* at 1352 (footnote omitted).

Cases from other circuits have reaffirmed this exception to the exclusivity provision of § 1105a(a). *See Salehi v. District Director, INS,* 796 F.2d 1286, 1290–91 (10th Cir.1986) (asylum applicants' attack on procedures governing motions to reopen based on asylum claims was within the district court's jurisdiction because it did not challenge the validity of individual orders of deportation nor matters upon which such orders were contingent); *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555, 1560–61 (11th Cir.1989), *cert. grant-*

ed, — U.S. ——, 110 S.Ct. 2584, 110 L.Ed.2d 265 (1990) (neither 8 U.S.C. § 1105a(a) or (c) barred district court jurisdiction over a suit challenging policies and procedures employed by INS in processing applications under the agricultural worker temporary resident provisions of the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1160). *See also In re Thornburgh,* 869 F.2d 1503, 1512 (D.C.Cir.1989) (district court may entertain a statutory or constitutional challenge to the manner in which an amnesty program is being administered).[5]

Similarly, in this case appellees were not seeking to set aside individual deportation orders, but to obtain injunctive and declaratory relief to protect the rights of a class of asylum-seekers during deportation proceedings. Like the policy regarding Haitians in *Haitian Refugee Center v. Smith,* Judge Daniel's policy was designed to clear a backlog of a class of cases—Salvadoran political asylum applications—and accomplished that objective. *See* 676 F.2d at 1029. In this case as in *Salehi,* the relief appellees sought was not inconsistent with a valid deportation order, because if appellees prevailed they "would gain only the right to remain in this country so long as it took the Attorney General to rule on their requests for asylum." *Salehi,* 796 F.2d at 1291; *see Cheng Fan Kwok v. INS,* 392 U.S. at 213, 88 S.Ct. at 1974.

*Pittston Coal Group v. Sebben,* 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988) is not to the contrary. In *Pittston,* the Supreme Court held the district court could not, by writ of mandamus, order the Secretary of Labor to readjudicate cases that had already been disposed of before new standards were implemented. The Court did not question the district court's jurisdiction to hear the suit, holding only that readjudication was barred by principles of res judicata. *Id.* at 121–22, 109 S.Ct. at 423–24. Other cases cited to support the

proved and refiled, Judge Daniel's imposition of an unspecified standard of adequacy made it as impossible for asylum applicants to pursue their claims as did the summary adjudication practices at issue in *Haitian Refugee Center v. Smith.*

5. *Compare Ayuda, Inc. v. Thornburgh,* 880 F.2d 1325, 1337–38 (D.C.Cir.1989) (declining to decide whether there is a "program" exception to § 1105a, but holding there is no such exception under the exclusivity provisions of 8 U.S.C. § 1255a(f)(4)(A) Supp. V 1987), relating to review of determinations respecting an application for adjustment of status under 8 U.S.C. § 1255a.

Attorney General's position are similarly inapposite; the particular rulings for which appellants cite them relate to the merits of disputes regarding the status of particular aliens, not challenges to a policy or practice. *See, e.g., Loya v. INS,* 583 F.2d 1110, 1114 (9th Cir.1978); *Dhangu v. INS,* 812 F.2d 455, 460–61 (9th Cir.1987).

■ The government contends this case does not come within the *Haitian Refugee Center v. Smith* exception because it involves the actions of a single judge. Judge Daniel's unauthorized filing requirements applied to all asylum applicants appearing before him; it constituted an established pattern or practice existing outside the context of any particular deportation hearing.[6] Moreover, the pattern or practice can be attributed fairly to the Attorney General. Judge Daniel is an employee of the Attorney General and the EOIR acting under the general supervision and direction of the Chief Immigration Judge. *See* 8 U.S.C. § 1103; 8 C.F.R. § 3.9. Evidence in the record reflects, and the Justice Department admitted at oral argument, that the Chief Immigration Judge knew of Judge Daniel's policy six months before suit was filed, yet did nothing to change it. A governing authority "may not avoid attribution of policy to itself simply by officially retaining unexercised ultimate authority to countermand a policy ..." *Spell v. McDaniel,* 824 F.2d 1380, 1386 (4th Cir.1987).[7] To hold otherwise in the circumstances of this case would allow the Attorney General to regulate piecemeal, bypassing normal public comment and publication requirements.

## III.

■ The statutory exhaustion requirement of § 1105a(c) is co-extensive with the exclusivity provision of § 1105a(a), and therefore is also inapplicable to this case. *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555, 1561 (11th Cir.1989). However, even if exhaustion of administrative remedies is not statutorily mandated, courts may require it. *NLRB v. Industrial Union of Marine and Shipbuilding Workers,* 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 1723 n. 8, 20 L.Ed.2d 706 (1968). This prudential exhaustion requirement is not a jurisdictional prerequisite but instead is within the discretion of the district court. *Id. See also United States v. California Care Corp.,* 709 F.2d 1241, 1248 (9th Cir. 1983). Courts may require exhaustion under this doctrine if:

(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.*

■ Further development of the record is not necessary in this case because appellees raise legal issues not within the particular expertise of the Attorney General. *See Haitian Refugee Center v. Smith,* 676 F.2d at 1034. Relaxing the exhaustion requirement would not significantly encourage bypassing the administrative process because the district court will have jurisdiction only in the rare case alleging a pattern or practice violating the rights of a class of applicants. *See id.*

■ The government argues the district court should have refrained from exercising jurisdiction because the BIA would have corrected Judge Daniel's mistakes, pointing to the BIA's decision in *Palma–Callejas.* After a careful review of the circumstances, the district court concluded Judge Daniel's practices were suspended because of the filing of this lawsuit, not because of the decision in *Palma–Callejas.* The court flatly found the actions taken by the government that mooted this suit "would not have been achieved, but for the

---

6. At least 1,244 aliens appeared before Judge Daniel during the time the challenged filing requirements were in effect (January 6 to June 25, 1986).

7. This conclusion is not inconsistent with the district court's finding that as a factual matter neither the Attorney General nor EOIR con-

doned or participated in Judge Daniel's pattern and practice. The lack of condonation makes Judge Daniel's actions no less attributable to the government—especially since Judge Daniel was the only government decisionmaker the asylum applicants had access to.

lawsuit." This is a finding of fact, and it is not clearly erroneous.[8] Moreover, the government itself implicitly recognized the inadequacy of individual administrative appeals by moving the Immigration Judge and the BIA to reopen all cases rejected by Judge Daniel without waiting for applicants to take an administrative appeal, and by staying the deportation of those putative class members who had not taken such appeals.[9]

## IV.

 Relying on *Rhodes v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988), the government contends appellees are not prevailing parties under EAJA because the case was eventually dismissed as moot. It might not be appropriate to consider this issue if it were a substantial one,[10] but the inapplicability of *Rhodes* is obvious. In *Rhodes*, the case was moot before judgment issued, and the requested change in prison policies could not have benefited either plaintiff, one of whom was dead and the other released. *Id.* at 4, 109 S.Ct. at 204. Here, the case became moot only because appellees achieved their objective, and this objective was achieved only because of appellees' suit. Appellees were in a "markedly better position than at the outset of their lawsuit," *Animal Lovers*

---

**8.** The court noted that:

1. Nine days before the hearing in district court (but after suit was commenced) the Chief IJ suspended IJ Daniel's asylum filing requirements;

2. *Defendants* had moved to reopen the cases of all putative class members identified to date (and those cases had been reopened);

3. INS District Counsel had stayed the deportation orders of those putative class members who had not appealed and whose voluntary departure dates had passed; and

4. Defendants represented to the court they would give notice prior to reinstituting the challenged policy.

These actions, the court concluded, "were taken in direct response to this [lawsuit] and resulted in plaintiffs obtaining all that they sought from the action."

**9.** It is a reasonable assumption that individual administrative appeals did not provide a practical remedy. The parties were able to identify 34 cases in which Judge Daniel deemed applicants to have abandoned their asylum applications and issued deportation orders against them. At least 15 of these appellees and puta-

---

*Volunteer Ass'n. v. Carlucci*, 867 F.2d 1224, 1225 (9th Cir.1989) (citations omitted), when the lawsuit became moot; and because the litigation was the "catalyst that prompted the opposing party to take action," plaintiffs were prevailing parties under EAJA. *McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir.1983).

AFFIRMED.

tive class members did not file administrative appeals. Notices were sent to the 1,244 aliens who appeared before Judge Daniels during the period in which the unlawful pattern and practices applied. Only 101 responded; of these, nine reported they were deterred from filing applications because of the practices followed in Judge Daniel's court. Two hundred eighty five notices were returned as undeliverable.

Moreover, appellees assert the record on appeal did not include the "abandoned" asylum applications but only determinations of deportability and grants of voluntary departure. The government does not dispute this. Thus, there was no record on which the BIA could have entertained an appeal even if the alien had the resources to file one.

**10.** The government agreed not to raise the issue of whether plaintiffs were prevailing parties under EAJA. Relying on this agreement, plaintiffs dropped their cross-appeal. Shortly thereafter, *Rhodes* was decided, and the government raised the case in its briefs.