Maria Elena CAMPOS; Milton Cardenas Alvarado; Solomon Avala Lopez; Rene Blanco Lopez; Luis Alonzo Hernandez–Cruz; Manuel De Jesus Jaime–Garcia; Jose Fredy Ramirez–Sanchez; Mauricio Rosales–Hernandez; Justiniano Salcado–Machado; Fredy Sandoval–Mazariegos; Maria Antonio Vasquez–Cortez, et al., Plaintiffs–Appellees,

v.

William F. NAIL, Jr.; Janet Reno,* Attorney General, Defendants–Appellants.

No. 93–15119.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 6, 1994.

Decided Dec. 30, 1994.

* Janet Reno, is substituted for her predecessor, William French Smith, as Attorney General.

Fed.R.App.P. 43(c)(1).

Stewart Deutsch, U.S. Dept. of Justice, Washington, DC, for defendants-appellants.

Anne Pilsbury, Central American Legal Assistance, Brooklyn, NY, for plaintiffs-appellees.

Before: SNEED, SCHROEDER and CANBY, Circuit Judges.

CANBY, Circuit Judge:

A class of aliens who sought political asylum brought this action in district court to challenge Immigration Judge William F. Nail, Jr.'s policy of denying changes of venue to asylum seekers who lacked a residence in the United States when originally detained. In a previous appeal, we held that the district court had jurisdiction to entertain the action. *Campos v. Nail,* 940 F.2d 495 (9th Cir.1991) ("*Campos I*"). On remand, the district court found that Judge Nail employed such a policy and held that the policy violated the applicants' constitutional rights to due process. Accordingly, the district court nullified all deportation orders against aliens who were subject to the policy. The government again appealed. We affirm the judgment of the district court, but we do so on statutory and regulatory rather than constitutional grounds.

## BACKGROUND

The appellees are Salvadoran and Guatemalan nationals who entered the United States along the Mexican border without inspection, hoping ultimately to obtain asylum. Most of the aliens, after their arrests, were detained at an immigration detention center in Florence, Arizona, until they could ar-

range to be released on bond. Upon being subjected to deportation proceedings, they applied for asylum. Because of the locations of their arrests, their cases were brought before Judge Nail, an immigration judge in Phoenix, Arizona, serving the Arizona–Nevada immigration district.

INS regulations provide that, when an alien files an asylum application, an advisory opinion must be obtained from the Bureau of Human Rights and Humanitarian Affairs in the Department of State. 8 C.F.R. § 208.10 (1984). Because of the large number of persons seeking asylum, particularly from El Salvador in the early 1980's, and for other reasons, the State Department advisory opinions became subject to considerable delay. This lag caused corresponding delays in processing the asylum applications.

Because of the lengthy delays, numerous asylum applicants had been at large on bond for many months by the time their cases were finally scheduled for hearings. Many of them had moved to other states, to be close to friends or family or to seek employment. Accordingly, each class member requested a change of venue from Phoenix (or in some cases Las Vegas) where their cases were docketed.[1] In order to make a change of venue feasible for the government, each applicant agreed to admit alienage and lack of proper documentation, thus relieving the INS of the burden of having to establish alienage through the testimony of a distant arresting officer.

Judge Nail nevertheless denied each venue motion according to a prescribed policy: unless the asylum seeker had established a residence in the United States before being arrested, the judge would automatically deny a change of venue. Because of this blanket policy, each new El Salvadoran or Guatemalan asylum seeker arrested crossing the border was required to come to Phoenix (or occasionally Las Vegas) for a final hearing no matter where the alien was living when the hearing eventually occurred and regardless of the cost or inconvenience of the travel or the presence of crucial witnesses at the distant location. For many of the aliens, Judge Nail ordered deportation in absentia for failure to appear at their deportation hearings.

In their complaint in district court filed almost ten years ago, the applicants alleged that Judge Nail's policy arbitrarily denied them fair hearings on their asylum claims. The district court held that it lacked jurisdiction over the action because the claim amounted to a challenge to deportation orders, reviewable only by the Board of Immigration Appeals and then the courts of appeals. See 8 U.S.C. § 1105a(a); 28 U.S.C. § 2342.

On the contingency that its jurisdictional ruling might be reversed on appeal, the district court went on to make several findings of fact and conclusions of law. The court found that Judge Nail had a blanket policy of denying changes of venue to asylum applicants who lacked a prior domestic residence, and that in applying this policy he failed to exercise discretion regarding motions for change of venue. The court ruled that this blanket policy constituted a pattern or practice that violated the applicants' due process rights to a fair hearing.

The class appealed the district court's determination that it lacked subject matter jurisdiction. We held that the district court had jurisdiction to entertain the action because the plaintiffs did not challenge individual deportation orders, but instead attacked a pattern or practice of unconstitutional conduct not readily apparent in individual proceedings. *Campos v. Nail,* 940 F.2d 495 (9th Cir.1991) (*"Campos I"*). We confined our decision to the jurisdictional question, and did not rule on the constitutionality of Judge Nail's policy. *Id.* at 497 n. 7.

On remand, the district court re-adopted its earlier fact findings, and reaffirmed its previous conclusion that Judge Nail's venue policy was unconstitutional. The court entered a decree nullifying all deportation orders of class members who were denied changes of venue.

---

1. The applicants made their requests for several reasons: they lacked funds to travel to Phoenix, they had relatives who could testify in their cases in their home jurisdiction, or they had no attorney in Phoenix but had free Spanish-speaking counsel in the jurisdiction to which they sought venue changed.

The government has now appealed on quite limited grounds. It states that it does not challenge any of the district court's findings of fact, nor does it challenge the relief that was granted. The sole question presented by the government is whether the district court erred in concluding that Judge Nail's policy violated plaintiffs' rights to due process.

## ANALYSIS

### A. Unlawfulness of the blanket policy

Although the government admits that Judge Nail had a practice of denying changes of venue to aliens who lacked a prior domestic residence, it argues that the policy did not violate due process. At most, the government argues, the policy constitutes an abuse of discretion in individual cases.

To a considerable degree, the government's argument that Judge Nail's policy merely constitutes a series of individual abuses of discretion constitutes an attempt either to dispute the district court's "pattern or practice" finding, or to revisit our decision in *Campos I.* The government has avowed that it does not contest the district court's fact finding, and we accept that avowal. The district court found that Judge Nail had a regular policy that governed motions for change of venue and that he failed to exercise discretion in regard to those motions. And, as we will explain below, there is no reason to revisit our holding in *Campos I* that the district court has jurisdiction to adjudicate the validity of Judge Nail's "pattern or practice."

■ The government is entitled, however, to argue here that Judge Nail's policy did not violate the plaintiffs' rights. The government focuses on the district court's conclusion that the policy denied the plaintiffs' constitutional rights[2]. We may, however, uphold the district court's conclusion on another ground if it is supported by the record.

*Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.,* 810 F.2d 869, 874 (9th Cir.1987). We are satisfied that the policy violated plaintiffs' statutory and regulatory rights, and a violation of those rights is sufficient to support the district court's decision.[3]

■ Section 201(b) of the Refugee Act, 8 U.S.C. § 1158, conferred upon all aliens a statutory right to apply for asylum. *Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 553 (9th Cir.1990). That right may be violated by a pattern or practice that forecloses the opportunity to apply. *See Id.* at 564 (upholding finding that coercion of aliens to accept voluntary departure violated their right to apply for asylum). The same provision of the Refugee Act required the Attorney General to establish means by which aliens, regardless of status, may apply for political asylum. *See* 8 U.S.C. § 1158. When deportation proceedings have commenced, an asylum application is considered and decided within the deportation proceedings. 8 C.F.R. §§ 208.3(b) and 208.10. Thus the exercise of the plaintiffs' rights to apply for asylum depends upon their opportunity to present their case to the immigration judge.

■ Deportation proceedings are subject to the fifth amendment guarantee of due process. *Baires v. I.N.S.,* 856 F.2d 89, 90 (9th Cir.1988); *Rios–Berrios v. I.N.S.,* 776 F.2d 859, 862 (9th Cir.1985). There is no reason, however, to explore the boundaries of the constitutional guarantee of procedural due process in the present context, and we do not do so. "[W]e need not reach the constitutional issue if we find that a statutory right was violated and that the violation caused prejudice to the alien." *Baires,* 856 F.2d at 91; *see also Massachusetts v. Westcott,* 431 U.S. 322, 323, 97 S.Ct. 1755, 1756, 52 L.Ed.2d 349 (1977) (granting relief on a statutory basis foreclosed the Court from reaching a constitutional issue); *Hagans v. Lavine,* 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974) ("a federal court

---

**2.** The district court also held that the policy denied plaintiffs their statutory rights to seek asylum, pursuant to 8 U.S.C. §§ 1158 and 1253.

**3.** The fair hearing considerations underlying the statutory and regulatory rights of the plaintiffs were fully addressed by the parties in their con-

stitutional presentations in the district court and on appeal. The government has not been deprived of any arguments by our decision to rely on statute and regulation, and to decline to address the constitutional issue.

should not decide federal constitutional questions where a dispositive nonconstitutional ground is available").

■■■ Congress by statute has provided that an alien must receive a hearing prior to deportation, in which the alien is entitled to a "reasonable opportunity to be present" and "a reasonable opportunity to ... present evidence on his own behalf." 8 U.S.C. § 1252(b). Aliens also have a statutory and regulatory right to counsel of their own choice, at no expense to the government. *See Orantes–Hernandez,* 919 F.2d at 554; *Baires,* 856 F.2d at 91; 8 U.S.C. § 1252(b)(2); 8 C.F.R. § 242.1(c). Although motions to change venue are left to the sound discretion of the immigration judge, an arbitrary refusal to change venue can be a violation of the statutory right to a reasonable opportunity to attend and present evidence at the deportation hearing. *Baires v. I.N.S.,* 856 F.2d 89, 92 (9th Cir.1988). It may also deny the right to counsel. *See id.* at 91, 93 n. 6; *cf. Orantes–Hernandez,* 919 F.2d at 564–67 (coercion of voluntary departure supports injunction based on denial of right to counsel). In *Baires,* we found a violation of the right to attend and present evidence when the judge denied a motion for a continuance and a change of venue without first considering the nature and importance of the evidence to the alien's case.[4] *Baires* identified several factors that the immigration judge should weigh in each individual case in considering a venue request: (1) the nature of the evidence to be presented and the importance of this evidence to the alien's claim, (2) whether the need for a change of venue is the result of unreasonable conduct on the part of the alien, and (3) the convenience of the immigration court. *Id.* at 92–93.

■■■ Underlying *Baires* and several other venue cases is the principle that the immigra-

tion judge must consider the individual circumstances of each alien in deciding whether a change of venue is necessary to safeguard an alien's right to a reasonable opportunity to be heard. *See, e.g., Hernandez–Vivas v. I.N.S.,* 23 F.3d 1557 (9th Cir.1994); *Maldonado–Perez v. I.N.S.,* 865 F.2d 328, 335–36 (D.C.Cir.1989). Otherwise, aliens face a substantial risk that they will lose the opportunities guaranteed to them by statute and regulation.

By routinely denying changes of venue to asylum seekers who had not established a residence in the United States prior to their arrests, and routinely failing to exercise discretion regarding such requests, Judge Nail ignored numerous factors that are relevant and important to the venue inquiry. Indeed, whether an alien had a prior domestic residence has little relevance to whether an alien has a reasonable opportunity to be present at a deportation hearing in Arizona or Nevada at a much later date. In all, Judge Nail's policy is not sufficiently tied to the factors we delineated in *Baires* to preserve the statutory right to a reasonable opportunity. As a consequence, the plaintiffs not only were deprived of their statutory and regulatory rights to appear and present evidence at their deportation hearing, but they also suffered interference with their rights to apply for asylum and to secure counsel at no expense to the government.

■■■ The government next contends that, even if the plaintiffs' rights were violated, they have not shown that they were prejudiced by Judge Nail's policy, and that accordingly they were not entitled to any relief. Here again, the district court's findings, which the government does not contest, are to the contrary. The district court found that many of the plaintiff class had been

---

4. Baires was arrested near Nogales, Arizona and sent to a detention facility in Florence, Arizona. *Baires,* 856 F.2d at 89. Upon release, he moved to San Francisco, where his family and friends were located. *Id.* at 90. His pro bono San Francisco counsel filed a motion for a continuance and a change of venue to San Francisco where Baires had witnesses who could testify on his behalf. Because the motion was filed "too close to the scheduled hearing date to allow [Judge Nail] to arrange for some other use of the

court's allotted time," Judge Nail denied the motion and proceeded with the asylum and deportation hearing. *Id.* Baires attended the hearing without his San Francisco counsel and presented no witnesses. Judge Nail ordered him deported. *Id.* We ruled that Judge Nail, in considering solely the convenience of the court and ignoring other factors such as the location of Baires's witnesses, violated Baires's statutory and regulatory procedural rights to present evidence. *Id.*

deported *in absentia* for failure to appear, and found that few had the money to return to Arizona for a deportation hearing. A total denial of opportunity to apply for asylum justifies injunctive relief. *See Orantes–Hernandez,* 919 F.2d at 564. The district court also found that the location of witnesses and the availability of representation militated in favor of granting changes of venue for class members. There was testimony to support the financial inability of asylum seekers to travel to Arizona for hearings. There was also testimony that the change of venue policy had an adverse effect on representation.[5] We conclude that the plaintiffs showed sufficient prejudice to justify relief from Judge Nail's policy. We accordingly affirm the district court's judgment.

## B. *Jurisdiction*

■ Because we base our decision on statutory and regulatory grounds, we must address the government's contention that there can be no "pattern or practice" jurisdiction in this case unless there is a constitutional violation.[6] The government argues that the language of *Campos I* compels this result. Because the reasoning of that case goes beyond the precise language used, we reject the government's contention.

■ Under the system that Congress devised to govern deportation proceedings and asylum claims, a district court generally may not hear an appeal of a final order of deportation. The courts of appeals possess exclusive jurisdiction over appeals of adverse deportation or asylum decisions. *See* 8 U.S.C. § 1105a(a) and 28 U.S.C. § 2342. The exception we nevertheless recognized in *Campos I* allows a district court to entertain a suit in equity alleging a pattern or practice of unconstitutional conduct existing beyond

the context of any singular deportation hearing. *Campos I,* 940 F.2d at 497–98. *See also Montes v. Thornburgh,* 919 F.2d 531, 535 (9th Cir.1990); *McNary v. Haitian Refugee Center,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991).

In *Campos I,* we expressly contemplated the right of a class of aliens to bring an action to enjoin a pattern or practice of *unconstitutional* conduct. Unconstitutionality of the pattern or practice is not a requisite, however. *Campos I* as well as *Montes* and *McNary* support the principle that such jurisdiction exists even if Judge Nail's policy violated only federal statutory rights. In *McNary,* for example, the Supreme Court considered a claim by alien farm workers that the INS violated their rights to procedural due process in administering a special amnesty program for farm workers. Congress had provided that determinations of "legalization" could be subjected to judicial review only in the review of an order of exclusion or deportation. 8 U.S.C. § 1160(e)(3)(A). The Court nevertheless held that the plaintiffs could bring an action in district court to challenge the "pattern or practice" of the INS. In so ruling, the court pointed out that "restricting judicial review to the courts of appeals as a component of the review of an individual deportation order is the practical equivalent of a total denial of judicial review of generic constitutional *and statutory* claims." *McNary,* 498 U.S. at 497, 111 S.Ct. at 899. (emphasis added). *See also Reno v. Catholic Social Services, Inc.,* —— U.S. ——, —— —— ——, 113 S.Ct. 2485, 2494–95, 125 L.Ed.2d 38 (1993).

Our reasoning in *Montes* and *Campos I* did not hinge upon the source of the federal right.[7] It hinged on the difficulty of perceiv-

---

5. We have previously had occasion to note the difficulty of securing representation for aliens whose hearings were held in an Arizona venue. *Baires,* 856 F.2d at 93 n. 6.

6. The government also urges us to reconsider our prior jurisdictional decision in light of several recently decided Supreme Court and Third Circuit decisions. *See Liteky v. United States,* —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), *Thunder Basin Coal Co. v. Reich,* —— U.S. ——, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), *Yang You Yi v. Maugans,* 24 F.3d 500 (3d Cir.1994)

and *Grant v. Shalala,* 989 F.2d 1332 (3d Cir. 1993). Contrary to the government's insistence, none of these decisions, decided since *Campos I,* casts doubt upon our holding that district court has jurisdiction when aliens allege a pattern or practice of unconstitutional conduct that is imperceptible in individual deportation proceedings and thus evades review there.

7. Indeed, a constitutional right can be enforced in an individual deportation proceeding if a violation of that right is apparent in the proceeding. *See, e.g., Garberding v. I.N.S.,* 30 F.3d 1187 (9th

ing a pattern or practice in an individual case and the corresponding inability of an alien to obtain appropriate relief in a deportation hearing. *Montes,* 919 F.2d at 536; *Campos,* 940 F.2d at 497–98. In *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 752–53 (9th Cir.1992), we remanded a similar case to district court, ordering it to address "whether the class's privileges, opportunities, or rights were violated by the EOIR's application of the BIA's policy[.]" We indicated there that jurisdiction would exist if the EOIR applies a policy "in such a manner that it systematically denies the class *either* its statutory privileges and opportunities *or* its constitutional rights." *Id.* (emphasis added). *See also National Center for Immigrants' Rights v. INS,* 913 F.2d 1350, 1352 (9th Cir.1990) (although district court jurisdiction regarding aliens released on bond is generally limited to habeas corpus proceedings under 8 U.S.C. § 1252(a)(1), the district court had jurisdiction to hear a constitutional *and statutory* challenge by a class of aliens regarding the I.N.S.'s blanket imposition of a no-work condition in alien release bonds) *rev'd on other grounds,* 502 U.S. 183, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991). Thus we conclude that a statutory or regulatory violation can support a "pattern or practice" case as well as a constitutional violation.

 In this case, the class alleged a pattern of conduct that was not readily apparent in individual deportation proceedings. Only after comparing the results of numerous cases was the unlawful policy discernible. In light of the limited ability of aliens to conduct discovery in individual deportation proceedings, such a pattern would be difficult or impossible to raise either as a defense or as a basis to obtain the immigration judge's recusal in such proceedings. Consequently, appropriate relief would not be available under the statutory scheme for appeals. Under these circumstances, district court properly has jurisdiction over a case challenging the unlawful pattern or practice.

Cir.1994) (vacating order of deportation because the INS violated the alien's right to equal protec-

## CONCLUSION

Judge Nail's blanket policy of denying changes of venue to any El Salvadoran or Guatemalan applicant for political asylum who lacked a domestic residence at the time of arrest was a violation of the aliens' statutory and regulatory rights to be assured a reasonable opportunity to attend their deportation hearings and to present evidence on their own behalf. This violation in turn interfered with the plaintiffs' statutory and regulatory rights to apply for asylum and to obtain representation by counsel at no expense to the government. On those statutory grounds, we affirm the district court's judgment and decree.

AFFIRMED.