

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-4-1994

# Yi, et al v. Maugans, et al

Precedential or Non-Precedential:

Docket 94-7060

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"Yi, et al v. Maugans, et al" (1994). *1994 Decisions.* Paper 8.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/8

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT
_____

NO. 94-7060
_____

YANG YOU YI, YEE BONG WON, LI GUANG FENG,
CHEN CHU SU, PIN LIN, YONG ZHONG PAN a/k/a
PU WING CHUN, SO GEE DONG, CHANG CHUN LU,
XIN-FEI ZHANG a/k/a XIN-FUEI ZARANG, TONG
WAI ZHANG, DAI MIN LU, SHI CHUN ZHENG,
CHUN HUA LIN, CHEN ZING, SHUIDI ZHENG,
GUO ZHEN XIE, A-72-761-974, LI YUN-YOU,
LIN MING LONG,

v.

GEORGE MAUGANS, District Counsel of the
United States Immigration and Naturalization
Service, Baltimore District; DAVID L.
MILHOLLEN, Director of the Executive Office
for Immigration Review and Chairman of the
Board of Immigration Appeals; RICHARD J.
SHARKEY, District Counsel of the United
States Immigration and Naturalization
Service, Philadelphia District; J. SCOTT
BLACKMAN, District Director of the United
States Immigration and Naturalization
Service, Philadelphia District; UNITED STATES
IMMIGRATION AND NATURALIZATION SERVICE; and
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;
JANET RENO, Attorney General of the United
        States; DORIS MEISSNER, Commission of
the  United States Immigration and
Naturalization Service
_____

YONG ZHONG PAN a/k/a Pu Wing Chun,

Appellant

v.

GEORGE MAUGANS, District Counsel of the
United States Immigration and Naturalization
Service, Baltimore District; RICHARD J.
SHARKEY, District Counsel of the United
States Immigration and Naturalization

1

Service, Philadelphia District; DAVID L.
MILHOLLEN, Director of the Executive Office
for Immigration Review and Chairman of the
Board of Immigration Appeals;

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. No. 93-cv-01702 and 93-cv-01766

———————

Argued March 24, 1994
Before: HUTCHINSON, ROTH, and ROSENN, <u>Circuit Judges</u>
Opinion Filed: May 5, 1994

———————

DAVID H. WEINSTEIN, ESQUIRE (Argued)
ROBERT S. KITCHENOFF, ESQUIRE
Kohn, Nast & Graf, P.C.
1101 Market Street, Suite 2400
Philadelphia, PA  19107

FRANCES P. RAYER, ESQUIRE
Pepper, Hamilton & Scheetz
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103

LORY D. ROSENBERG, ESQUIRE
American Immigration Law Foundation
Legal Action Center
1400 Eye Street, NW
Washington, D.C.  20005

SHARON J. PHILLIPS, ESQUIRE
513 East 86th Street, # 3C
New York, New York  10028

    Attorneys for Appellant

FRANK W. HUNGER, ASSISTANT ATTORNEY GENERAL
DAVID M. BARASCH, UNITED STATES ATTORNEY
MICHAEL JAY SINGER, ATTORNEY
THOMAS M. BONDY, ATTORNEY (Argued)
Appellate Staff
Civil Division, Room 3343
Department of Justice
Washington, DC   20530

    Attorneys for Appellees

———————

OPINION OF THE COURT

ROSENN, Circuit Judge.

In February 1993, the Golden Venture, a ship bearing human cargo of approximately 300 Chinese nationals, left the waters of Thailand bound for the distant shores of the United States. The petitioner Yong Zhong Pan (Pan), one of its passengers, together with hundreds of other Chinese nationals, had made a dangerous journey from the People's Republic of China (PRC) across the mountains and borders of Burma into Thailand. There, they embarked aboard the Golden Venture, which attempted unlawfully to smuggle them into the United States. After more than one hundred days at sea, the ship, within sight of its final destination, ran aground off the New York harbor. Its passengers were thrown or jumped into the sea, but most of them managed to survive and safely reach shore. The Immigration and Naturalization Service (INS) took these aliens into custody, detained them, and commenced exclusion proceedings against them.

Approximately one hundred twenty of the Golden Venture passengers, including Pan, were transferred to the York County Prison on June 7, 1993. The York County Prison is located in the Middle District of Pennsylvania where many of the detainees, including Pan, filed claims for asylum which were rejected. After exhausting their administrative remedies, they individually filed habeas corpus actions in the United States District Court for the Middle District of Pennsylvania challenging the final orders of exclusion. Because the petitioners raised many similar issues and filed many similar motions for relief, the district court

4

consolidated the individual actions under the above-entitled caption.

On November 17, 1993, Pan filed an amended petition and a separate complaint seeking nationwide class certification and interim class relief. Pending a determination of the court's jurisdiction, it initially granted conditional class certification limited to those aliens in the Middle District who had exhausted their administrative remedies. Contemporaneously, the court issued a temporary restraining order barring the Government from deporting any class members before December 1993, which date it later extended. The court subsequently declined on jurisdictional grounds to certify the requested nationwide class; it decertified the conditionally certified class and accordingly lifted the temporary restraining order as moot. Pan timely appealed to this court. We affirm.

I.

In his application for asylum, Pan claimed that he was persecuted and has a well-founded fear of future persecution by the Chinese government, if denied asylum, because of his opposition to its birth control policies. Specifically, Pan averred that after the birth of their first child, he and his wife fled to avoid sterilization. While in hiding, Mrs. Pan bore a second son. At the hospital where the child was born, she was forced to undergo sterilization. The Pans were also ordered to pay heavy fines. Because the Pans were unable to pay the full amount, officials came to their home, confiscated some furniture and demolished parts of the house. Fearing arrest, exorbitant

5

fines, and harsh physical punishment, Pan decided to leave his homeland and family to come to the United States.

On August 9, 1993, an Immigration Judge (IJ) heard and rejected Pan's asylum claim. Pan appealed to the Board of Immigration Appeals (BIA) which found that Pan's testimony lacked plausibility, accuracy, and truthfulness in light of the evidence of record regarding general conditions in China. The Board therefore held that Pan failed to meet his burden of establishing his eligibility for asylum. Furthermore, the Board reaffirmed its adherence to Matter of Chang, Int. Dec. No. 3107 (BIA 1989). In Matter of Chang, the BIA determined that the People's Republic of China's one couple, one child policy was not, on its face, persecutive within the meaning of the relevant asylum statutes and regulations.

In his amended petition/complaint seeking certification of a nationwide class of Chinese aliens, Pan broadly defined the class to include:

> All persons who, as nationals of the PRC, are or in the future may be applicants for withholding of deportation from and/or for asylum in the United States, in whole or in part because they have a clear probability (for withholding of deportation) or well founded fear (for asylum) of persecution on account of coerced population control policies of the PRC.

The class complaint essentially challenged the BIA's reliance and application of its decision in Chang. In addition, Pan sought a preliminary injunction forbidding the INS from deporting any member of the nationwide class.

6

In rejecting a nationwide class certification, the court reasoned that the nationwide scope of the requested class was inconsistent with the statutory limitations for judicial review. Specifically, the court noted that 8 U.S.C. § 1105a(b) requires that judicial review of an exclusion order may be obtained only "by habeas corpus proceedings and not otherwise" and that 8 U.S.C. § 1105a(c) mandates that for an order of exclusion to be reviewed by a court, aliens must exhaust all administrative remedies available to them. Thus, because the proposed nationwide class would include those aliens who are not within the court's habeas jurisdiction and who have not satisfied the exhaustion requirement, the court concluded that its jurisdiction would not extend to them. On the appeal before us now, the issues raised are whether the district court erred in denying Pan's motion for nationwide class certification and injunctive relief.

## II.

We have jurisdiction to hear this appeal from the district court's denial of Pan's motion for a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1). Because the district court's ruling denying class certification is inextricably bound up in our review of the denial of the injunction, we have jurisdiction to address that determination too. Cohen v. Board of Trustees, 867 F.2d 1455, 1468 (3d Cir. 1989) (in banc).

On appeal, Pan disputes the district court's determination that it lacked jurisdiction to certify a nationwide

7

class of Chinese aliens. He invokes 8 U.S.C. § 1329 (immigration matters), 28 U.S.C. § 1331 (federal question jurisdiction), and 5 U.S.C. § 701-06 et seq (Administrative Procedure Act) as authority on which the district court could have based subject matter jurisdiction. Our review of the district court's determination regarding subject matter jurisdiction is plenary. See Sinclair v. Soniform, Inc., 935 F.2d 599, 601 (3d Cir 1991).

We begin, as the district court did, with a review of the specific jurisdictional limitations applicable to alien exclusion proceedings. Chief Judge Rambo of the district court noted that, although Congress has provided judicial review of agency determinations of excludability in the context of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., it also imposed specific limitations on the timing and scope of such a review. First, an alien subject to a final order of exclusion may seek review of the determination only in a habeas corpus proceeding. 8 U.S.C. § 1105a(b) ("[A]ny alien against whom a final order of exclusion has been made . . . may obtain judicial review of such order by habeas corpus proceeding and not otherwise."). A district court's habeas corpus jurisdiction is territorially limited and extends only to persons detained and custodial officials acting within the boundaries of that district. 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions.") (emphasis supplied); see also Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 493-95 (1973)

8

(holding that habeas jurisdiction proper where court issuing writ has jurisdiction over custodian).

Second, courts are empowered to review orders of exclusion only for those individuals who have exhausted their administrative remedies. 8 U.S.C. § 1105a(c) ("An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws or regulations. . . ."). Thus, aliens who have received an adverse decision from an immigration judge must first exercise their right to take an administrative appeal to the BIA. Only after the BIA affirms the IJ's decision would an alien be entitled to judicial review. See Alleyne v. United States Immigration & Naturalization Service, 879 F.2d 1177 (3d Cir. 1989) (§ 1105a(c) precludes judicial review when there is no appeal to the Board).

Read together, these two statutory provisions would bar the district court from certifying appellant's class insofar as the proposed class would include Chinese aliens, or their custodians, not within the Middle District of Pennsylvania and Chinese aliens who have not yet received a final BIA decision. Accordingly, the district court concluded correctly that since the proposed class included individuals over whom it had no jurisdiction, the class could not be certified. See Califano v. Yamasaki, 442 U.S. 682, 701 (1979) (explaining that class may only be certified where court has jurisdiction over the claim of each individual member of the class).

9

Notwithstanding these provisions limiting jurisdiction, Pan contends that the general jurisdictional provision of 8 U.S.C. § 1329 is applicable to this action. The language of §1329 is broad. The statute states that "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of the [INA]." It is substantially similar to 28 U.S.C. § 1331 which confers jurisdiction on district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States." Pan's argument, although superficially appealing, does not withstand scrutiny.

Pan cannot simply ignore statutory provisions that are averse to his position.[1] The statute must be construed so as to give effect to each provision. See <u>United States v. Alcan</u>

---

[1] Congress did not haphazardly restrict an alien in exclusion proceedings to the writ of habeas corpus for judicial review. Congress was disturbed with the growing frequency of judicial actions initiated by aliens where cases had no legal basis or merit, but which were brought solely to prevent or delay indefinitely their deportation. It carefully concluded that habeas corpus not only gave the alien the privilege of testing the legality of the proceedings, but also an opportunity for a fair hearing. "Such a restriction to habeas corpus does not deprive the alien of any constitutional rights. It is well settled that aliens seeking admission to the United States cannot demand that their applications for entry be determined in a particular manner or by use of a particular type of proceedings." H.R. Rep. No. 1086, 87th Cong., 1st Sess., <u>reprinted in</u> 1961 U.S.C.C.A.N. 2950, 2976.

The Committee on the Judiciary attached "special significance . . . that habeas corpus actions are necessarily determined in the locality where the alien is, where he has been excluded, and where he 'knocking at the door.' This prevents a process of 'shopping around' by an applicant for admission for a court in which he may seek to file repetitive declaratory judgment actions." <u>Id.</u> at 2977.

10

<u>Aluminum Corp.</u>, 964 F.2d 252, 265 (3d Cir. 1992). To hold otherwise would render the jurisdiction and exhaustion provisions of §§ 1105a(b) and (c) superfluous. <u>Id.</u> Interpreting the statute in a manner that harmonizes all its provisions, we hold that, in enacting §§ 1105a(b) and (c), Congress permitted judicial challenges of orders of exclusion solely by way of habeas proceedings and only to those aliens who have exhausted their administrative remedies.

Pan, citing to a number of a cases, persists in arguing, however, that where, as here, his claims not only challenge excludability but also raise a challenge to the Government's programmatic application of <u>Chang</u> as an arbitrary barrier to asylum claims grounded in the "one child" policy, jurisdiction should not be limited to a habeas proceeding, but rather should be deemed proper under § 1331. The cases Pan relies upon for support are inapposite.

In <u>McNary v. Haitian Refugee Ctr., Inc.</u>, 498 U.S. 479 (1991), the Supreme Court upheld district court jurisdiction under § 1331 in the face of another provision of the INA similar to § 1105a(b). The provision in question barred judicial review of an administrative decision denying legal status to special agricultural workers (SAW), except when reviewing an order of exclusion or deportation. <u>Id.</u> at 486. The court found that the provision did not preclude it from exercising jurisdiction over a class action complaint alleging various procedural abuses, which effectively precluded an alien from making an adequate record for

11

appeal. Id. at 487-89. The Court's holding was influenced by a number of factors.

First, the Court stated that the provision limiting review except in the context of an order of deportation or exclusion was narrowly drawn. It referred to "a determination" which connotes a single act. Because the plaintiffs were challenging a practice or procedure rather than a denial based on the factual merits of an individual application, the statutory provision limiting review was not applicable to them. The Court reasoned that, had Congress intended the review provisions to apply to INS procedures and practices, it could have easily drafted broader exclusionary language.

Moreover, the Court held that because the relief that the aliens were seeking was procedural and collateral to the merits of the denial of legal status for SAW, the aliens were not required to exhaust their administrative remedies. Furthermore, the Court was reluctant to limit judicial review because to do so, would, as a practical procedural matter, have amounted to a complete denial of meaningful judicial review. This was the case because, under the INA, review was limited to the administrative record which the aliens alleged was incomplete and inadequate. These factors, however, are not applicable here.

To begin with, the provision limiting review to habeas corpus is broad enough to encompass aliens with appellant Pan's status. Section 1105a(b) clearly states that "any alien against whom a final order of exclusion has been made . . . may obtain judicial review of such order by habeas corpus and not

12

otherwise." (emphasis added).  Thus, because Pan is subject to an order of exclusion, he should not be able to circumvent the explicit language of the statute and the intent of Congress.

Moreover, Pan's claim that the BIA is impermissibly applying Chang is neither procedural nor collateral.  It is, at bottom, a substantive challenge to the legal standard employed by the Government in adjudicating asylum claims.  To describe this challenge as procedural because appellant is not challenging his order of exclusion but rather the legal standard upon which his order was based, is not persuasive.  If appellant's characterization is correct, the review provisions of an order of exclusion or deportation could simply be elided by characterizing the challenge as a collateral attack on the legal standard rather than a direct assault on the order.  This result is indefensible.

Our reasoning is bolstered by the Supreme Court's construction of "final orders of deportation."  In INS v. Chadha, 462 U.S. 919 (1983), the Court held that the term includes "all matters on which the validity of the final order is contingent." Id. at 938.  This point applies with equal force in the context of orders of exclusion.  Here, the BIA's decision in Chang is, according to Pan, the predicate for the order of exclusion being entered against him.  In reality, Pan, therefore, challenges the final order and squarely falls within § 1105a(b).

Finally, a denial of the class certification would not foreclose all forms of meaningful judicial review.  Regardless of whether a class is certified, the district court would have the authority and opportunity to review the validity of Chang to

13

determine whether the INA extends asylum to aliens who flee their country to avoid persecution on account of their opposition to their country's policy of coercive population control.  In fact, in an individual habeas corpus action commenced by another alien who arrived on the Golden Venture, the United States District Court for the Eastern District of Virginia, in concluding that the alien was eligible for asylum, held that Chang is not controlling and that the BIA's interpretation of the Act merits no judicial deference.  Guo Chun Di v. Carroll, 842 F. Supp. 858 (E.D. Va. 1994).  This decision fortifies our position that restricting review to a habeas corpus proceeding does not deny appellant effective review of his claim.  Thus, the case sub judice is distinguishable in significant respects from McNary.

Although we realize that Chinese aliens who do not file habeas petitions will be unable to obtain judicial review of their claims -- and it is for this reason that Pan seeks a nationwide class of all Chinese aliens, including those who have not filed habeas petitions -- we are, nevertheless, restrained from acting.  By limiting review to those aliens who have filed habeas petitions, Congress intended to foreclose all other avenues of relief and it obviously realized that some aliens may not have their day in court.  Although Pan suggests that this is a harsh result, the scheme enacted by Congress strikes a careful balance, ensuring judicial review for those aliens who seek it, while sheltering the judicial system from being overpowered with frivolous claims of asylum.

14

As further support for his position that declaratory relief is appropriate, Pan cites Brownell v. We Shung, 352 U.S. 180 (1956), where the Supreme court recognized the existence of jurisdiction in the district courts to entertain either habeas corpus actions or actions for declaratory and injunctive relief, in the context of exclusion proceedings. Shung's precedential value, however, is suspect inasmuch as it was decided before the enactment of § 1105a(b). Although at least one case decided after the enactment of § 1105a(b) has cited Shung with approval, Pizarro v. District Director Of U.S. Immigration and Naturalization Service, 415 F.2d 481 n.1 (9th Cir. 1969), we believe that Congress intended to supersede Shung. See Garcia v. Smith, 674 F.2d 838 (11th Cir. 1982), modified on other grounds, 680 F.2d 1327 (11th Cir. 1982); Jean v. Nelson, 711 F.2d 1455, 1503 (11th Cir. 1983), on reh'g, en banc, 727 F.2d 957 (11th Cir. 1984), and aff'd, 472 U.S. 846 (1985); see also H.R. Rep. No. 1086, 87th Cong., 1st Sess., reprinted in 1961 U.S.C.C.A.N. 2950, 2974 (§ 1105a restores law to the position it occupied prior to the Supreme Court's decision in Shung).

In any event, Shung is inapposite. The relevant statute in Shung required aliens who hold "certificates of identity" to test the validity of their exclusion by habeas corpus only. Shung, 352 U.S. at 183. The alien in question did not possess the certificate and therefore did not fall within the purview of the statute. Id. Not wanting to conclude that Shung would be deprived of judicial review, the Court determined that he could proceed via a declaratory action. Id. In the case sub

15

judice, however, Pan falls squarely within the statute requiring him to file a habeas petition.  Moreover, by filing a habeas petition, Pan will obtain judicial review.  Thus, the holding in Shung does not implicate our present situation.  Rather, it addresses the same concerns identified by the Court in McNary, and can be distinguished in the same manner.

Nor would any of the other cases cited by Pan provide the court with authority to ignore the explicit requirements of §1105a in favor of a general grant of authority under § 1331. Courts invoking § 1331 jurisdiction have done so only when the challenged administrative practice, policy or regulation precluded adequate development of the administrative record and consequently meaningful review through the procedures set forth in § 1105a, and/or when the challenged practice was collateral and divorced from the substantive aspects underlying the alien's claim of asylum.  In this sense, the holdings are similar to McNary, and thus would be inapplicable in circumstances, as those present here, where judicial review is adequate and where the challenge relates to the merits of the final order.  See, e.g., El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review, 959 F.2d 742, 746-47 (9th Cir. 1992) (§ 1331 jurisdiction proper in class challenge alleging systematic inadequate translation of immigration proceedings by INS); Montes v. Thornburgh, 919 F.2d 531, 535 (9th Cir. 1990) (§ 1331 jurisdiction proper in class challenge to action of individual Immigration Judge who refused to accept certain documents); Jean v. Nelson, 727 F.2d 957, 979-80 (11th Cir. 1984) (en banc) (§

16

1331 jurisdiction proper in class challenge to INS failure to give notice of right to apply for asylum), aff'd, 472 U.S. 846 (1985) (expressing no view on jurisdictional issues); Haitian Refugee Center v. Smith, 676 F.2d 1023, 1033 (5th Cir. 1982) (§ 1331 jurisdiction proper in class challenge to expedited administrative procedure employed by the INS), disapproved on other grounds, Jean, 727 F.2d at 976 n.27.

It is noteworthy that Smith, the case expansively cited as authority by other courts and whose holding that § 1331 jurisdiction is proper in spite of the limitations contained in §1105a, emphasized the narrowness of its holding and refused to condone "any such end-run around the administrative process." Smith, 676 F.2d at 1033. Heeding Smith's admonition, we deny jurisdiction where, as here, the challenge by the aliens is neither procedural nor collateral to the merits and where application of the specific statutory provisions would not preclude meaningful judicial review.[2]

Nor would the APA, which provides for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, supply the district court with jurisdiction to certify a class claim. Pan does not deny that habeas review of the BIA's decision would be sufficient; rather he claims that aliens are entitled to due administrative, i.e., BIA,

---

[2] We find it significant, as did the district court, that no court ever approved the exercise of § 1331 jurisdiction over the claims of an alien subject to a final order of exclusion.

17

consideration in the first instance.  The cited provision, however, provides no authority to allow courts to fashion alternatives to the scheme specified by Congress when the review procedure is adequate.  Whitney National Bank v. Bank of New Orleans and Trust Co., 379 U.S. 411, 420 (1965).  Thus, the district court did not err in denying class certification of Pan's proposed class and requiring members of the proposed class to follow the procedures set forth in § 1105a.

Pan's assertion that a class action would promote judicial economy consistent with Congress' goal of eliminating piecemeal proceedings does not convince us otherwise.  Even assuming, arguendo, that there are tangible efficiency gains in this case, in the long run, extending a district court's jurisdiction may well prove harmful to Congress' aim.  Granting an additional layer of judicial review will, in the end, frustrate the policy of curtailing repetitious and unjustified appeals.  If Congress is convinced that the procedures can be improved upon, then it and only it should provide for an alternative framework.  Our duty, however, is to apply faithfully the procedural requirements put in place by the legislature.

Although there is some authority that would allow class-wide habeas relief, Nguyen Da Yen v. Kissinger, 528 F.2d 1194, 1202 (9th Cir. 1975), the district court declined to certify a habeas class.  The court, seeing no advantage to a class-wide habeas action subject to exhaustion and jurisdictional limits, instead consolidated all similar claims within its district.  We do not believe the court in the instant case abused

18

its discretion in refusing to certify this class, even though the court, for some reason, had decided provisionally to certify a habeas class.

Pan contends, however, that contrary to the district court's assertion it did not have to limit its habeas territorial jurisdiction to aliens held in the Middle District of Pennsylvania. He reasons that because a writ of habeas acts upon the custodian of the detainee, the writ should issue to the district director of the INS, over whom the court did have personal jurisdiction, and thus detainees under the constructive custody of the district director, even those not within the court's district, should be subject to the court's habeas jurisdiction. This argument has no merit.

It is the warden of the prison or the facility where the detainee is held that is considered the custodian for purposes of a habeas action. See Ex Parte Endo, 323 U.S. 283, 306 (1944) (writ is directed to prisoner's "jailer"). This is because it is the warden that has day-to-day control over the prisoner and who can produce the actual body. See Brittingham v. United States, 982 F.2d 378 (9th Cir. 1992); Guerra v. Meese, 786 F.2d 414 (D.C. Cir. 1986) (Parole Commission is not custodian despite its power to release the petitioner). That the district director has the power to release the detainees does not alter our conclusion. Otherwise, the Attorney General of the United States could be considered the custodian of every alien and prisoner in custody because ultimately she controls the district directors and the prisons. Thus, the district court correctly

19

held that its habeas jurisdiction is limited to the Middle District of Pennsylvania.

Pan also suggests, without providing any support, that we direct the district court to certify a class-wide habeas action by first certifying a defendant class consisting of various district directors around the country who are responsible for the custody of Chinese aliens. Once a defendant class is certified, Pan claims that a nationwide plaintiff class can properly be certified. Pan's contention is circuitous and illogical and we reject it. If, as discussed above, a nationwide plaintiff class can not be certified on its own merits, due to the court's territorial limitations, we fail to see how the certification of a defendant class would make any difference. In any event, as previously discussed the district directors are not the proper parties upon whom writs of habeas corpus should be served.

Finally, because Pan's motion for injunctive relief is premised on the granting of class certification which we deny, we deny this relief too.

Accordingly, the judgment of the district court will be affirmed.