56 F.3d 70
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Maria BENITEZ, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 Nos. 93-70506, 93-70758.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1994.
Decided June 2, 1995.
 
 Before: GIBSON,* HUG, and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Maria Benitez appeals the Board of Immigration Appeals' (BIA) refusal to estop the INS from opposing her motion for administrative closure of her deportation proceedings and the BIA's decisions affirming the immigration judge's denial of her application for asylum and withholding of deportation. She also appeals the BIA's denial of her motion to reopen her proceedings in order to allow her to apply for a suspension of deportation. We have consolidated her appeals, and we AFFIRM.
 
 I. BACKGROUND
 
 3
 Maria Benitez is a forty-five-year-old native and citizen of El Salvador. She was apprehended on March 23, 1986, near San Isdro, California, and an Order to Show Cause why she should not be deported was issued the following day. Benitez was conditionally released on March 25, 1986, and was ordered to report to an INS office within fifteen days. Although she reported to an INS office on April 8, 1986, she failed to provide her address until January 2, 1992. As a result, the Order to Show Cause was not filed with the Executive Office of Immigration Review until January 26, 1992.
 
 
 4
 On May 1, 1992, Benitez filed an application for asylum and withholding of deportation with the immigration court. In support of her application, Benitez produced evidence that her father had been a local commander in El Salvador in charge of regional security and that her uncle was a local commissioner in the same area. Benitez also alleged that her brother had been executed by rebels in 1983, but was unable to produce any firm evidence linking rebel activity to the death of her brother. Benitez also alleged that she was robbed of her keys and purse in May of 1983 by a masked man in a pickup truck and that in 1988 the occupants of a military vehicle threw an explosive device into the yard in front of her brother's house where her two youngest children were staying. Once again, Benitez was unable to link these attacks to rebel activity.
 
 
 5
 On September 3, 1992, Benitez moved for administrative closure of her case in immigration court to allow her to apply for membership in the plaintiff class in American Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991) (hereafter ABC). The Immigration Judge denied both her motion for administrative closure and her application for asylum and withholding of deportation, ruling that Benitez was not eligible for ABC benefits and that she had not presented any evidence establishing a reasonable basis for a fear of persecution upon her return to El Salvador.
 
 
 6
 Benitez appealed both the denial of her asylum application and the denial of her motion for administrative closure to the Board of Immigration Appeals. The BIA concluded that it lacked jurisdiction over the issue of whether Benitez should be allowed to pursue an application for ABC benefits because the decision was "within the direct purview of the Immigration and Naturalization Service" and reviewable only by the United States District Court. It also affirmed the denial of asylum, concluding that Benitez had failed to meet her burden of showing either a well-founded fear or a clear possibility of persecution.
 
 
 7
 On June 28, 1993, Benitez filed a motion with the BIA to reopen her case in order to allow her to apply for a suspension of deportation. The BIA denied her motion, concluding that Benitez had failed to prove prima facie eligibility for the underlying relief sought because she had failed to show that deportation would result in "extreme hardship." This appeal followed.
 
 II. DISCUSSION
 A. ESTOPPEL
 
 8
 Benitez argues that the BIA erred by failing to conclude that the INS was estopped from denying her motion for administrative closure. The Board held that it lacked jurisdiction over Benitez's rights under the ABC agreement, determining that Benitez's remedy lay with the district court. We review the BIA's jurisdiction de novo as a question of law. De la Cruz v. INS, 951 F.2d 226, 228 (9th Cir. 1991); Montes v. Thornburgh, 919 F.2d 531, 534 (9th Cir. 1990).
 
 
 9
 Prior to 1990, an asylum application filed with the INS by an applicant for admission or an alien within the United States was decided by the appropriate INS district director. 8 C.F.R. Secs. 208.1(a) and 208.8(a) (1990). Where an application for asylum was denied by the district director, the applicant had the right to renew his or her request for asylum before an immigration judge in exclusion or deportation proceedings. 8 C.F.R. Sec. 208.9 (1990). The regulations were revised in 1990, 55 Fed. Reg. 30680, July 27, 1990, removing jurisdiction over asylum applications filed with the INS from the district directors and placing it with the newly-created Office of Refugees, Asylum, and Parole of the Immigration and Naturalization Service. 8 C.F.R. Sec. 208.2(a) (1991). All asylum applications filed after 1990 were heard by Asylum Officers under the authority of the Office of Refugees, Asylum, and Parole. Id.
 
 
 10
 In ABC, the district court approved a settlement that granted certain class members who had already had their claims for asylum adjudicated and denied by the district director under the former regulations the right to a de novo, unappealable asylum adjudication before an Asylum Officer pursuant to the regulations effect in 1990. American Baptist Churches, 760 F. Supp. at 799. The INS agreed to stay or administratively close proceedings before immigration judges or the Board of Immigration Appeals of any class member whose case was pending on November 30, 1990, until that class member has been given an opportunity to effectuate his or her rights under the agreement. Id. at 805-06.
 
 
 11
 Benitez, as a Salvadoran in the United States as of September 19, 1990, qualified as a class member under the terms of the ABC agreement. Id. at 799. The only class members eligible for a de novo asylum adjudication before an Asylum Officer, however, were those members who had not been convicted of an aggravated felony and had either: 1) applied for Temporary Protected Status within the statutory period designated for registration under Sec. 303(c)(3) of the Immigration Act of 1990, or 2) indicated to the INS their intent in writing to apply for a de novo asylum adjudication before an Asylum Officer or otherwise receive the benefits of this agreement within the time designated for initial registration under Sec. 303(c)(3). American Baptist Churches, 760 F. Supp. at 799-800. Under the applicable provisions of the Immigration Act of 1990, the period in which Salvadorans were eligible to register for temporary protected status under the ABC agreement ran from January 1, 1991 to June 30, 1991. Secs. 303(b)(1) and 303(c)(3) of the Immigration Act of 1990.
 
 
 12
 The immigration judge determined that Benitez was ineligible for a de novo asylum determination because she did not apply for ABC benefits until March 21, 1992, well after the eligibility period provided for in the ABC agreement had expired. Benitez argues that the INS should be estopped from opposing her motion for administrative closure because the INS failed to notify her of her opportunity to register for ABC benefits within the required time period. 8 U.S.C. Sec. 1254a(a)(3)(C) (1993) requires that the Attorney General notify all aliens who are in deportation proceedings at the time their foreign state is designated under Sec. 302 that temporary protected status may be available to them. El Salvador was designated as such a state under Sec. 303(a) of the Immigration Act of 1990. Under the terms of the ABC agreement, however, only class members with cases pending with the Executive Office of Immigration Review ("EOIR") on November 30, 1990, or those pending on certification before the Attorney General were entitled to personal notice by first-class mail. American Baptist Churches, 760 F. Supp. at 800.
 
 
 13
 Benitez's case was clearly pending with the EOIR on November 30, 1990. 8 C.F.R. Sec. 242.1(a) (1986) states that a deportation proceeding is deemed to have commenced on the date of the issuance and service of an Order to Show Cause. The INS issued an Order to Show Cause on March 24, 1986, and served it on her the same day. Under the terms of the ABC agreement, therefore, Benitez was entitled to receive personal notice via first-class mail of her opportunity as an eligible class member to apply for a de novo asylum adjudication before an Asylum Officer.[1]
 
 
 14
 The terms of the ABC agreement state unequivocally that the district court is the appropriate forum to adjudicate Benitez's rights under the ABC agreement.[2] It is equally apparent that Benitez has failed prove that the government is estopped from opposing her motion for administrative closure. Estoppel against a non-governmental entity requires: (1) a knowingly false representation or concealment of material facts to a party ignorant of the facts, (2) the intention that the other party should rely on it, (3) and actual and detrimental reliance by the other party. Mukherjee v. INS, 793 F.2d 1006, 1008 (9th Cir. 1986). A party asserting estoppel against a governmental entity such as the INS bears the additional burdens of proving "affirmative misconduct going beyond mere negligence," and that "the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." Id. at 1008-09 (quotations omitted).
 
 
 15
 Benitez argues that the six-year delay in filing the Order to Show Cause with the immigration court constituted affirmative misconduct. The delay, however, was due to Benitez's failure to provide the INS with her current address until January of 1992. Without that address, the necessary papers could not have been served, and no personal notice of her Temporary Protected Status rights could have reached her in time to allow her to assert her rights under the settlement. The Supreme Court has indicated that the INS will not be estopped when there is a justifiable reason for delay, however long it may be. INS v. Miranda, 459 U.S. 14, 18 (1982).
 
 B. Asylum and Withholding of Deportation
 
 16
 Benitez argues that the BIA erroneously denied her application for asylum and withholding of deportation on the basis that she failed to demonstrate a well-founded fear of persecution. We review the BIA's finding that an alien has not demonstrated a well-founded fear of persecution for substantial evidence in the record as a whole. INS v. Elias-Zacarias, 112 S. Ct. 812, 815 (1992). Such findings are reversible only if no reasonable factfinder could have failed to find the requisite fear of persecution. Id.
 
 
 17
 In order to qualify for asylum as a "refugee" under 8 U.S.C. Secs. 1158 and 1101(a)(42)(A) (1988), Benitez must show a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion ...." 8 U.S.C. Sec. 1101(a)(42)(A). In order to qualify for withholding of deportation under 8 U.S.C. Sec. 1253(h) (1988), Benitez must make a higher showing of a "clear probability of persecution" should she return. INS v. Stevic, 467 U.S. 407, 413 (1984).
 
 
 18
 Benitez claims that she faces persecution upon her return to El Salvador based on her family's and her former employer's connections to the Salvadoran government. The immigration judge found that Benitez had "failed to present any evidence, either documentary or testimonial, establishing a reasonable basis for a fear of political persecution." The BIA affirmed.
 
 
 19
 Benitez argues that the BIA failed to recognize Benitez's family as a particular social group to which membership therein may serve as a basis for a well-founded fear of prosecution. This circuit, however, has expressly held that persecution based on family membership does not qualify as "persecution on account of ... membership in a particular social group" within the meaning of the Immigration and Naturalization Act. Estrada-Posadas v. INS, 924 F.2d 916, 919 (9th Cir. 1991) (quotation omitted). Moreover, the BIA determined that Benitez failed to demonstrate any basis for a well-founded fear of persecution based on her family membership. We have reviewed the record and conclude that the BIA's determination was supported by substantial evidence.
 
 C. Motion to Reopen
 
 20
 The BIA denied Benitez's motion to reopen her deportation proceeding on the basis that she failed to make a prima facie showing of eligibility for suspension of deportation by virtue of extreme hardship. We review the BIA's denial of a motion to reopen for abuse of discretion. INS v. Doherty, 502 U.S. 314 (1992). Factual findings underlying the Board's decision are reviewable under the substantial evidence standard. Elias Zacarias, 502 U.S. 478 (1992).
 
 
 21
 A motion to reopen deportation proceedings shall not be granted "unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing ...." 8 C.F.R. Sec. 3.2 (1990). In addition, the moving party must show both prima facie eligibility for the type of relief sought and that she warrants that relief in the discretion of the court. INS v. Abudu, 485 U.S. 94, 104-05 (1988). In order to show prima facie eligibility for suspension of deportation, Benitez was required to prove: (1) at least seven years continuous physical presence in the United States; (2) good moral character during that period; and (3) extreme hardship resulting from deportation to the alien, or to her spouse, parent, or child who is a citizen of the United States or is an alien lawfully admitted for permanent residence. 8 U.S.C. Sec. 1254(a)(1) (1988).
 
 
 22
 Benitez offered new material evidence that she has now maintained seven years continuous presence in the United States, thereby making her eligible for suspension of deportation. The BIA denied her motion to reopen her case, concluding that she had failed to establish a prima facie case of eligibility for an order of suspension of deportation on the basis that she had failed to establish the element of extreme hardship.
 
 
 23
 The determination of whether "extreme hardship" exists is necessarily dependent on the individual facts of each case. The BIA is, however, free to construe the term "extreme hardship" narrowly. INS v. Jong Ha Wang, 450 U.S. 139, 145 (1981). Matter of Anderson, 16 I & N Dec. 596, 597 (BIA 1978), outlines a nonexhaustive list of several relevant factors to be utilized in determining whether this standard has been met. They include: age of the subject; family ties in the United States and abroad; length of residence in the United States; condition of health; conditions in the country to which the alien is returnable -- economic and political; financial status -- business and occupation; the possibility of other means of adjustment of status; whether of special assistance to the United States or community; immigration history; and position in the community. The BIA considered these factors and concluded that Benitez had failed to establish extreme hardship.
 
 
 24
 We find no abuse of discretion. Benitez claims that her deportation would inflict extreme hardship on her and her family residing in the United States, which consists of four children, two of whom are minors and all of whom are natives and citizens of El Salvador, a noncitizen grandchild, and Benitez's sister, a lawful permanent resident alien. Benitez also claims extreme hardship based on the loss of her housekeeping business, her allegedly bleak economic prospects in El Salvador, and the loss of her active role in local civic and church affairs.
 
 
 25
 The BIA determined that Benitez failed to demonstrate extreme hardship. Because neither her children nor her grandchild are U.S. citizens, the BIA properly declined to take into account any hardship suffered by them pursuant to Sec. 244(a)(1) of the Act. The BIA found that Benitez had failed to show that separation would involve any greater anguish than that faced by any other alien similarly situated. Ordinary familial separation occasioned by deportation is insufficient to merit extreme hardship. Hassan v. INS, 927 F.2d 465, 468 (9th Cir. 1991). The BIA also found that due to the nature of Benitez's business, there was little in the way of assets that she would be forced to liquidate in order to relocate to El Salvador, that nothing would preclude her from finding adequate employment in El Salvador, and that there was no reason why she could not remain active in community and church affairs in El Salvador. The findings of the Board are supported by substantial evidence, and we find no abuse of discretion.
 
 
 26
 Benitez also attempts to repackage her asylum claim as part of her extreme hardship claim by alleging that she will be subject to persecution should she return to El salvador. She offers no new evidence on this motion other than that adduced under her asylum claim. The BIA properly concluded that these allegations were irrelevant as to Benitez's motion to reopen her case. It is well-settled that the Board is free to construe "extreme hardship" narrowly and to consider claims of persecution only in the context of applications for asylum or prohibition of deportation. Kashefi-Zihagh v. INS, 791 F.2d 708, 710 (9th Cir. 1986). Once again, we find no abuse of discretion.
 
 III. CONCLUSION
 
 27
 We conclude that the INS is not estopped from opposing Benitez's motion for administrative closure of her immigration proceedings, that the BIA properly denied Benitez's application for asylum and withholding of deportation, and that the BIA properly denied her motion to reopen her immigration proceedings. Consequently, we AFFIRM the decisions of the BIA.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Under the version of 8 C.F.R. Sec. 242.1(a) in effect in 1990, a deportation proceeding is not commenced until the INS files an Order to Show Cause upon the Office of the Immigration Judge. While no such Order to Show Cause was filed in this case until January 28, 1992, Benitez's deportation proceedings had clearly commenced under the version of the regulation in effect in 1986
 
 
 [2]
 "If an individual class member who has sought the benefits or rights of this agreement raises any claim regarding the denial of any such right or benefit (including a dispute over membership in the class) ... such individual is entitled to seek enforcement of the provisions hereof by initiating a separate proceeding in any federal district court ... If the federal district court nonetheless declines to hear the class member's claims, he shall be entitled to bring such matter before this Court and the Court will retain jurisdiction under this agreement over the class member's claims." American Baptist Churches, 760 F. Supp. at 809-10